UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN J. BENYI,

                         Plaintiff,

v.                                    3:20-CV-1463
                                    (DNH/ML)
NEW YORK; BINGHAMTON POLICE
DEPARTMENT; BROOME COUNTY
SHERIFF'S DEPARTMENT; NEW YORK
APPELLATE DIVISION THIRD DEPARTMENT;
UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF NEW YORK;
SECOND CIRCUIT COURT OF APPEALS;
DETECTIVE SERGEANT BARRY ANGEL; and
DEPUTY SHERIFF WILLIAM GUYYEY,

                         Defendants.
_____

APPEARANCES:                    OF COUNSEL:

JOHN J. BENYI
  Plaintiff, *Pro Se*
Lea County Correctional Facility
6900 West Millen
Hobbs, New Mexico 88244

MIROSLAV LOVRIC, United States Magistrate Judge

### ORDER and REPORT-RECOMMENDATION

      The Clerk has sent this *pro se* complaint (Dkt. No. 1) together with an amended

application to proceed *in forma pauperis* (Dkt. No. 4) filed by John J. Benyi ("Plaintiff") to the

Court for review.  For the reasons discussed below, I deny Plaintiff's amended *in forma pauperis*

application (Dkt. No. 4) without prejudice, and I recommend that Plaintiff's Complaint (Dkt. No.

1) be dismissed in its entirety, in part (1) without prejudice and with leave to amend, and (2) with

prejudice and without leave to amend.

I.    **BACKGROUND**

On November 30, 2020, Plaintiff commenced this action by filing a verified Complaint and a motion to proceed *in forma pauperis*.  (Dkt. Nos. 1, 2.)  On December 1, 2020, the Court denied Plaintiff's *in forma pauperis* application as incomplete and administratively closed the case.  (Dkt. No. 3.)  On December 22, 2020, Plaintiff filed an amended *in forma pauperis* application.  (Dkt. No. 4.)  As a result, on January 4, 2021, the case was reopened and restored to the Court's active docket.  (Dkt. No. 5.)

Construed as liberally[1] as possible, the Complaint alleges that Plaintiff's civil rights were violated by New York State, the Binghamton Police Department, the Broome County Sheriff's Department,[2] the New York Appellate Division Third Department, the United States District Court for the Northern District of New York, the Second Circuit Court of Appeals, Detective Sergeant Barry Angel,[3] and Deputy Sheriff William Guyyey[4] (collectively "Defendants").  (*See generally* Dkt. No. 1.)  More specifically, Plaintiff alleges that on April 17, 1987, his rights were violated by Defendant Angel—an employee of Binghamton Police Department—who concocted a false confession to non-existent crimes.  (Dkt. No. 1, Attach. 1 at 1.)  In addition, Plaintiff alleges that Inspector Donald Conidin—an employee of the Binghamton Police Department—

---

[1]    The Court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

[2]    The Complaint lists the Broome County Sheriff's Department as a Defendant in this matter.  (Dkt. No. 1 at 1.)  As a result, the Clerk of the Court is directed to amend the docket sheet accordingly.

[3]    The Complaint lists Detective Sergeant Barry Angel as a Defendant in this matter.  (Dkt. No. 1 at 1.)  As a result, the Clerk of the Court is directed to amend the docket sheet accordingly.

[4]    The Complaint lists Deputy Sheriff William Guyyey as a Defendant in this matter.  (Dkt. No. 1 at 2.)  As a result, the Clerk of the Court is directed to amend the docket sheet accordingly.

removed evidence from his dresser and that Patrolman William Grace—an employee of the Binghamton Police Department—stole his swiss army knife, and, on information and belief, stole his television, stereo, and audio and video tape collection. (*Id.*)

Plaintiff alleges that on May 30, 1987, Defendant Angel and Defendant Guyyey—an employee of Broome County Sheriff's Department—arranged to have him attacked by Scott Haven, which resulted in Plaintiff suffering "serious brain damage, . . . numerous surgeries," and required Plaintiff to take anti-seizure medications. (*Id.*)

Plaintiff alleges that "[a]ll [three] of the cops probably perjured themselves at trial," though it is unclear which three police officers Plaintiff is referring to. (*Id.*) Plaintiff alleges that he was acquitted of all indicted charges at his criminal trial but convicted of an unindicted charge "on the say-so of a proven perjurer[,] [Defendant] Angel." (*Id.* at 2.)

Plaintiff alleges that he filed a motion pursuant to N.Y. Crim. Proc. Law § 440 but that Judge Monseratte "deliberately ignored the proven perjury and fraud." (*Id.*) In addition, Plaintiff alleges that Defendant New York Appellate Division Third Department "refused to review the case" three weeks before the chief justice was arrested by the Federal Bureau of Investigations. (*Id.*)

Plaintiff alleges that United States District Judge Hurd of Defendant United States District Court for the Northern District of New York, "accepted an unsigned, unnotarized 'affidavit' from ADA Lehman . . . and used it to dismiss the case."[5] (*Id.*) In addition, Plaintiff

---

[5]    Although not set forth by Plaintiff in the Complaint, the Court notes that on January 7, 1991, Plaintiff filed a *pro se* civil rights action in the Northern District of New York, No. 6:91-CV-0018 (NPM/GJD) ("*Benyi I*"). On February 28, 1997, United States Senior District Judge Neal P. McCurn, granted the defendants' motion for summary judgment. (*Benyi I*, Dkt. No. 163.) In addition, on February 22, 1991, Plaintiff filed a *pro se* habeas corpus claim in the Northern District of New York, No. 6:91-CV-0196 (LEK/DH) ("*Benyi II*"). On September 22, 1994, then-United States Magistrate Judge David N. Hurd issued a report and recommendation,

alleges that Defendant Second Circuit Court of Appeals declared Plaintiff's case a threat to national security and took away Plaintiff's rights. (*Id*.)

Plaintiff alleges that Defendants conspired with the New York Department of Corrections to lose his legal papers when he was transferred to Arthur Kill Correctional Facility ("Arthur CF"). (*Id*.) Plaintiff alleges that "they"[8] had me attacked a second time at Arthur CF. (*Id*.)

Plaintiff alleges that "they" provided false information to officials in New Mexico, which resulted in Plaintiff's arrest, his house being "invaded" three times, and threats to his wife unless Plaintiff pleaded guilty. (*Id*. 3.) Plaintiff alleges that he was arrested by his probation/parole officer for medical marijuana but that violation was dismissed. (*Id*.) Plaintiff alleges that "they" claimed that "they" found illegal porn on his computer but that Plaintiff merely searched a file sharing program for "Playboy" and none of the porn that he viewed was "labeled in any way that appeared illegal." (*Id*.)

Plaintiff alleges that "PPO Megan," "PPO Kevin," their supervisor Pollada, and Douglas and Gladys at La Posada halfway house conspired to cover up their culpability by forcing Plaintiff to plead guilty to—what appears to be a violation of the terms of Plaintiff's probation or parole—failure to program. (*Id*. at 4.) Plaintiff alleges that his failure to program was "their" fault, not his, and that these individuals threatened to arrest his "innocent caregiver," Margaret Malone. (*Id*.)

---

which recommended that Plaintiff's petition for writ of habeas corpus be denied. (*Benyi II*, Dkt. No. 37.) On April 17, 1996, United States District Judge Con. G. Cholakis accepted and adopted Magistrate Judge Hurd's report and recommendation and denied Plaintiff's petition for writ of habeas corpus. (*Benyi II*, Dkt. No. 43.)

[8]    Plaintiff uses the term "they" frequently throughout the Complaint. (*See generally* Dkt. No. 1.) However, it is unclear to the Court who Plaintiff is referring to.

The Complaint does not appear to assert any causes of action. However, attached to the Complaint are excerpts from a document with information and instructions for filing a complaint pursuant to 42 U.S.C. § 1983. In addition, Plaintiff states that he filed an action against the New Mexico Probation/Parole and La Posada Halfway House alleging causes of action pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1997, and the Americans with Disabilities Act ("ADA").[9] (Dkt. No. 1 at 7.)

For relief, Plaintiff seeks his immediate release to the care of his United States Department of Veterans Affairs ("V.A.") caregiver, Margaret Malone, and his V.A. fiduciary, Dorota Montour, in California. (*Id*. at 5.)

Plaintiff also filed an amended application for leave to proceed *in forma pauperis*. (Dkt. No. 4.)

## II. PLAINTIFF'S AMENDED APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).[10] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently

---

[9]    On November 30, 2020, Plaintiff commenced a *pro se* civil rights action in the District of New Mexico, No. 2:20-CV-1244 (KG/KBM) ("*Benyi III*"). On January 8, 2021, United States District Judge Kenneth J. Gonzales dismissed Plaintiff's Complaint. (*Benyi III*, Dkt. No. 4.)

[10]    Section § 1915(g) prohibits a prisoner from proceeding *in forma pauperis* where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. *See* http://pacer.uspci.uscourts.gov. It does not appear from that review that Plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash*, 2010 WL 5185047, at *1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review, the Court finds that Plaintiff has submitted a completed IFP application which has been certified by an appropriate official at his facility (Dkt. No. 4), and which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). However, Plaintiff has not filed the inmate authorization required in the Northern District pursuant to Local Rule 5.1.4(b)(1)(B). (*See generally* docket sheet; *see also* Dkt. No. 3.)[11]

Accordingly, Plaintiff's amended application to proceed with this action IFP is denied without prejudice.

## III.    LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

Ordinarily, the finding that Plaintiff does not qualify for IFP status would end the Court's discussion, and Plaintiff, in light of his *pro se* status, would likely be afforded an opportunity to either prepay the full filing fee, or submit a new, completed, and certified application for IFP. Because, however, as is discussed more completely below, I find that Plaintiff's Complaint fails to state a claim upon which relief may be granted, 28 U.S.C. § 1915 requires that the court dismiss the action "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid[.]" 28 U.S.C. § 1915(e); *see also* 28 U.S.C. 1915A(a) ("The court shall review . . . as soon as practicable . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.").

---

[11]    The Clerk of the Court is directed to provide Plaintiff with a blank inmate authorization form.

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that — . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[12]  Similarly, under 28 U.S.C. § 1915A, a court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curium) (noting that Section 1915A applies to all actions brought by prisoners against governmental officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure.  Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See* Fed. R. Civ. P. 8(a)(2).  The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable."  *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

---

[12]    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis in either law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

(2007), *rev'd on other grounds*, 682 F. App'x 30.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).  Rule 8 "demands more than an unadorned the-defendant-unlawfully-harmed-me accusation."  *Id.*  Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal.  *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

## IV.    ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally.  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

### A.    Claims Pursuant to 42 U.S.C. § 1983

#### 1.    Claims Against Defendants New York and New York Appellate Division Third Department

After carefully considering the matter, I recommend that Plaintiff's claims against Defendant New York and New York Appellate Division Third Department pursuant to 42 U.S.C. § 1983, be dismissed with prejudice because they are immune from suit.

Defendant New York is immune from suits pursuant to 42 U.S.C. § 1983 seeking either legal or equitable relief, under the Eleventh Amendment. *Papasan v. Allain,* 478 U.S. 265, 276 (1986); *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 98-100 (1984).

Moreover, Defendant New York State Appellate Division Third Department is merely an agency or arm of New York State. *See Ognibene v. Niagara Cnty. Sheriff's Dep't*, 03-CV-0678E, 2003 WL 2443989, at *3 (W.D.N.Y. Dec. 1, 2003) ("To the extent the plaintiff names various state courts as defendants and seeks either legal or equitable relief against them under § 1983, they are immune from such suit under the Eleventh Amendment."). As an agency or arm of the State of New York, the court is immune from suit under the Eleventh Amendment. *See Kentucky v. Graham,* 473 U.S. 159, 166 (1985); *see also Mercado v. Town of Goshen*, 20-CV-5399, 2020 WL 5210949, at *3 (S.D.N.Y. Aug. 28, 2020) ("Plaintiff sues the 'Orange County Court,' which is part of the New York State Unified Court System. The Court therefore dismisses Plaintiff's § 1983 claims against this Defendant under the doctrine of Eleventh Amendment immunity and because these claims are frivolous."); *Curto v. Palisades Collection, LLC*, 07-CV-529S, 2008 WL 11357852, at *4 (W.D.N.Y. Mar. 10, 2008) (dismissing the plaintiff's claims against the "New York State Unified Court System, 8th Judicial District Buffalo City Court" as barred by the Eleventh Amendment); *Saint-Fleur v. City of New York,* 99-CV-10433, 2000 WL 280328, *2 (S.D.N.Y., Mar. 14, 2000) (collecting cases) ("State courts, as arms of the State, are entitled to Eleventh Amendment immunity from suit in federal court."); *Fields v. Walthers,* 94-CV-1659, 1997 WL 204308 at *2 (N.D.N.Y. April 5, 1997) (Pooler, J.) ("For Eleventh Amendment purposes, governmental entities of the state that are considered 'arms of the state' receive Eleventh Amendment immunity.").

As a result, I recommend that Plaintiff's claims against Defendants New York and New York Appellate Division Third Department[13] be dismissed with prejudice and without leave to amend. *Johnson v. Fischer*, 19-CV-1384, 2020 WL 758964, at *2 (N.D.N.Y. Feb. 14, 2020) (Stewart, M.J.) (recommending dismissal, without leave to amend, claims against the Appellate Division Third Department); *Dinsio v. Appellate Division, Third Dep't*, 16-CV-0324, 2017 WL 3016832, at *12 (N.D.N.Y. July 14, 2017) (Suddaby, C.J.) (citing *Zuckerman v. Appellate Division, Second Dep't, Supreme Court of the State of N.Y.,* 421 F.2d 625, 626 (2d Cir. 1970); *Bernstein v. New York,* 591 F. Supp. 2d 448, 465 (S.D.N.Y. 2008)) ("Defendant correctly argues that, as the sole named Defendant in this case, the Eleventh Amendment bars Plaintiff's claims because the Third Department is considered 'an arm of the state of New York.'").

## 2. Claims Against Defendants Binghamton Police Department and Broome County Sheriff's Department

After careful consideration, I recommend dismissal of Plaintiff's claims pursuant to 42 U.S.C. § 1983 against Defendants Binghamton Police Department and Broome County Sheriff's Department because they are not entities susceptible to suit.

A municipal police department is not susceptible to suit pursuant to 42 U.S.C. § 1983. *La Grande v. Town of Bethlehem Police Dep't*, 08-CV-0738, 2009 WL 2868231, at *2 (N.D.N.Y. Sept. 1, 2009) (Kahn, J.); *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) (internal citations omitted). "Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the

---

[13]    The Court also notes that Defendant New York Appellate Division "Third Department is also not considered a 'person' for purposes of 42 U.S.C. § 1983." *Dinsio*, 2017 WL 3016832, at *12, n.13 (citing *Zuckerman*, 421 F.2d at 626; *Ajamian v. New York*, 13-CV-1316, 2014 WL 3928448, at *6 (N.D.N.Y. Aug. 11, 2014) (D'Agostino, J.) (holding that the Third Department is not a "person" within the meaning of Section 1983)).

municipality and cannot sue or be sued." *Walker v. U.S. Marshalls*, 08-CV-0959, 2009 WL 261527, at *2 (E.D.N.Y. Feb. 4, 2009) (quoting *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002)); *see also Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 164 (D. Conn. 2005) (collecting cases).

Here, Plaintiff's claims against Defendants Binghamton Police Department and Broome County Sheriff's Department, which have no legal, separate identity apart from the City of Binghamton and Broome County, respectively, are not plausible. Therefore, I recommend dismissal of the claims against Defendants Binghamton Police Department and Broome County Sheriff's Department, with prejudice and without leave to amend. *See Jackson v. Gunsalus*, 16-CV-0647, 2016 WL 4004612, at *5 (N.D.N.Y. June 24, 2016) (Dancks, M.J.), *report and recommendation adopted,* 2016 WL 3983635 (July 25, 2016) (Sharpe, J.) (dismissing claims against the Syracuse Police Department with prejudice and without leave to amend because the Syracuse Police Department "is not susceptible to suit under § 1983."); *Makas v. Benjamin*, 09-CV-0129, 2009 WL 3871441, at *3 (N.D.N.Y. Nov. 18, 2009) (Kahn, J.) (dismissing claims against Ulster County Sheriff's Department as it is "an administrative arm of the county," which cannot be sued under § 1983).

3.    **Claims Against Defendants United States District Court for the
Northern District of New York[14] and Second Circuit Court of Appeals**

After carefully considering the matter, I recommend that Plaintiff's claims against

Defendants United States District Court for the Northern District of New York and Second

Circuit Court of Appeals be dismissed based on the doctrine of sovereign immunity.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies

from suit." *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994); *see also Robinson v.*

*Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) ("Because an action against a

federal agency or federal officers in their official capacities is essentially a suit against the

United States, such suits are also barred under the doctrine of sovereign immunity, unless such

immunity is waived."). "[T]he United States is immune from constitutional tort claims against

the United States, its agencies, or federal employees sued in their official capacities." *Perez v.*

*Hawk*, 302 F. Supp. 2d 9, 18 (E.D.N.Y. 2004).

As a result, I recommend that Plaintiff's § 1983 claims against the Federal defendants be

dismissed for lack of subject matter jurisdiction. *See, e.g.*, *Johnson v. Wolfe*, 19-CV-7337, 2019

---

[14]     The Court notes that it has authority to decide this matter despite the fact that it is named
as a defendant. *Hansel v. U.S. Supreme Court, Second Circuit Court of Appeals*, 141 F.3d 1151
(2d Cir. 1998). Federal judges are required to disqualify themselves in any proceeding in which
their impartiality might reasonably be questioned. 28 U.S.C. § 455(a). The ultimate inquiry
under Section 455(a) is whether a reasonable person would conclude that the judge's impartiality
could reasonably be questioned, and disqualification is not required on the basis of remote,
contingent or speculative interests. *United States v. Thompson,* 76 F.3d 442, 450 (2d Cir.1996);
*United States v. Lovaglia,* 954 F.2d 811, 815 (2d Cir.1992). Plaintiff did not sue any member of
this Court in an individual capacity. Here the danger of partiality, if any, is based on remote and
speculative concerns because Plaintiff seeks nothing more than a series of vague declarations and
has alleged no specific wrongdoing by members of this Court. Accordingly, disqualification is
not required. In any event, disqualification is not possible here because it would leave Plaintiff
with no judges of this Court to hear his Complaint. Thus, the rule of necessity applies and this
Court may proceed to hear the case. *United States v. Will,* 449 U.S. 200 (1980); *Atkins v. United
States,* 214 Ct.Cl. 186 (Ct. Cl. 1977).

WL 5784704, at *3-4 (S.D.N.Y. Nov. 5, 2019) (dismissing claims against, *inter alia*, the Second Circuit Court of Appeals based on the doctrine of sovereign immunity); *Forjone v. Dep't of Motor Vehicles*, 414 F. Supp. 3d 292, 301 (N.D.N.Y. 2019) (Hurd, J.) (dismissing the plaintiff's claims against the federal defendants pursuant to, *inter alia*, 42 U.S.C. § 1983, based on the doctrine of sovereign immunity); *Olmeda v. Babbits*, 07-CV-2140, 2008 WL 282122, at *5 (S.D.N.Y. Jan. 25, 2008) (dismissing plaintiff's §§ 1983, 1985, 1986 claims against federal agencies as barred by sovereign immunity).

The Court has also considered whether the Federal Tort Claims Act ("FTCA") might provide Plaintiff a means of relief.  The FTCA grants a limited waiver of sovereign immunity that applies to "claims against the United States for money damages . . . for injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b).

"Thus, for liability to arise under the FTCA, a plaintiff's cause of action must be comparable to a cause of action against a private citizen recognized in the jurisdiction where the tort occurred, and his allegations, taken as true, must satisfy the necessary elements of that comparable state cause of action."  *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988).

However, there is no indication that Plaintiff properly exhausted any possible claim under the FTCA, which requires a claimant to "first present[ ] the claim to the appropriate Federal agency" and have it "denied by the agency in writing."  28 U.S.C. § 2675(a).  This failure provides independent justification to dismiss any such claim against the Federal defendants, too. *See, e.g.*, *Celestine v. Mt. Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005)

("The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court.").

Moreover, Plaintiff has improperly named the federal agencies as defendants in this action. *See, e.g.*, *Langella v. Bush*, 306 F. Supp. 2d 459, 463 (S.D.N.Y. 2004) ("Under the FTCA, suit must be brought directly against the United States, and federal agencies are immune from suit.").

As a result, I recommend that Plaintiff's claims against Defendants United States District Court for the Northern District of New York and Second Circuit Court of Appeals, be dismissed.

### 4. Claims Against Defendants Angel and Guyyey in Their Official Capacities

To the extent that Plaintiff intended to sue Defendants Angel and Guyyey in their official capacities, the Supreme Court has explained that this kind of claim is "to be treated as a suit against the entity"; i.e., the City of Binghamton and Broome County.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

In *Monell v. Dep't of Soc. Servs.*, the Supreme Court held that a municipality may be held liable under § 1983 if a plaintiff can demonstrate that the constitutional violation was caused by a municipal "policy or custom."  *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). However, the Supreme Court has intentionally made these so-called "*Monell*" claims "hard to plead and hard to prove." *Crawley v. City of Syracuse*, 17-CV-1389, 2020 WL 6153610, at *9 (N.D.N.Y. Oct. 21, 2020) (Hurd, J.). "Unlike state tort law, a municipality cannot be held liable under § 1983 merely because it happened to employ the alleged tortfeasor."  *Crawley*, 2020 WL 6153610, at *9.

Instead, "under § 1983[ ] local governments are responsible only for 'their *own* illegal acts.'"  *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in original) (quoting *Pembaur v.*

*Cincinnati*, 475 U.S. 469, 479 (1986)).  Thus, "to establish municipal liability under 42 U.S.C. §

1983, a plaintiff must demonstrate that the deprivation of his constitutional right was 'caused by

a governmental custom, policy or usage of the municipality.'"  *Deferio v. City of Syracuse*, 770

F. App'x 587, 589 (2d Cir. 2019) (summary order) (quoting *Jones v. Town of East Haven*, 691

F.3d 72, 80 (2d Cir. 2012)).

Through a series of decisions, the Supreme Court has recognized that *Monell* liability

may be established through: (1) a policy formally adopted and endorsed by the municipality; (2)

actions taken by policymaking officials that caused the particular deprivation alleged; (3)

practices by subordinate officials that are not expressly authorized but are so widespread and

consistent that policymakers must have been aware of them; or (4) a failure by policymakers to

train or supervise that amounts to "deliberate indifference" to the rights of those who come into

contact with the inadequately trained or supervised municipal employees.  *Deferio*, 770 F. App'x

at 590 (collecting cases); *see also Benacquista v. Spratt*, 217 F. Supp. 3d 588, 599-600

(N.D.N.Y. 2016) (Hurd, J.) (recognizing same theories of liability).

The Complaint does not allege facts plausibly suggesting that the City of Binghamton or

County of Broome violated Plaintiff's rights based on a custom, policy, or practice.  (*See

generally* Dkt. No. 1.)  In fact, the Complaint is devoid of any factual assertions related to

wrongdoing by these municipal entities.

As a result, I recommend that, to the extent Plaintiff intended to assert claims against

Defendants Angel and Guyyey in their official capacities, those claims be dismissed for failure to

state a claim upon which relief may be granted.

### 5.    Statute of Limitations

The statute of limitations for a § 1983 action accruing in New York is three years. *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). The statute of limitations begins to run on the date that the plaintiff's claims accrues. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Federal law governs the accrual date. *Morse v. Univ. of Vt.*, 973 F.2d 122, 125 (2d Cir. 1992). Generally, under federal law, a cause of action accrues when "the plaintiff knows or has reason to know the injury which is the basis of his action." *Covington v. New York*, 171 F.3d 117, 121 (2d Cir. 1999) (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980)); *see Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013) (per curiam) (citing *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002)) (a claim for equal protection accrues "when the plaintiff knew or should have known of the disparate treatment."). That is so even if "the full extent of the injury is not then known or predictable." *Fahs Const. Group, Inc.*, 725 F.3d at 292. "[S]tate tolling rules determine whether the limitations period has been tolled, unless state tolling rules would 'defeat the goals' of section 1983." *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 1997) (citing *Pearl*, 296 F.3d at 80).

Although the statute of limitations is an affirmative defense, where it is clear from the face of the complaint that a claim is barred by the applicable statute of limitations, the claim is subject to dismissal for failure to state a claim on 28 U.S.C. § 1915(e)(2)(B) review. *See Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (holding that a complaint can be dismissed on initial review based on a defense that appears on the face of the complaint); *Syfert v. City of Rome*, 17-CV-0578, 2018 WL 3121611, at *3-5 (N.D.N.Y. Feb. 12, 2018) (Dancks, M.J.) (dismissing all claims barred by the statute of limitations on initial review pursuant to 28 U.S.C. § 1915(e)(2)(B)), *report and recommendation adopted by*, 2018 WL 2316681 (N.D.N.Y. May 22,

2018) (Suddaby, C.J.); *Syfert v. City of Rome*, 17-CV-0578, 2017 WL 3405521, at *8-10

(N.D.N.Y. Aug. 7, 2017) (Dancks, M.J.) (same), *report and recommendation adopted by*, 2017

WL 5195230 (N.D.N.Y. Nov. 9, 2017) (Suddaby, C.J.); *Syfert v. City of Rome*, 15-CV-1149,

2015 WL 6819168, at *7-8 (N.D.N.Y. 2015) (Kahn, J.) (same).

     Here, drawing all reasonable inferences and construing the Complaint liberally, Plaintiff

commenced this action on November 20, 2020. (Dkt. No. 1.)[15] As a result, any causes of action

in Plaintiff's Complaint that accrued before November 20, 2017, are barred by the statute of

limitations.

     The only dates set forth in the Complaint are (1) an incident that occurred on April 17,

1987, (2) an incident that occurred on May 30, 1987, and (3) Plaintiff's criminal trial that took

place February 1988. (Dkt. No. 1 at 2; Dkt. No. 1, Attach. 1 at 1.) The Court also notes that

Defendant New York Appellate Division Third Department denied Plaintiff's appeal on July 20,

1989. *People v. Benyi,* 152 A.D.2d 864 (N.Y. App. Div. 3d Dep't 1989). Moreover, on October

19, 1989, the New York Court of Appeals denied Plaintiff leave to appeal. *People v. Benyi,* 74

N.Y.2d 894 (N.Y. 1989). As set forth in note 5 *supra*, on February 22, 1991, Plaintiff filed a

writ of habeas corpus claim in Defendant United States District Court for the Northern District of

New York, which was dismissed on April 17, 1996. (*Benyi II*, Dkt. No. 43.) Any causes of

action related to incidents that occurred on these dates, which occurred approximately twenty

years before November 20, 2017, are barred by the statute of limitations.

---

[15]     The Court notes that Plaintiff's Complaint was filed on November 30, 2020. (Dkt. No. 1.) However, pursuant to the prison mailbox rule, the Court deems Plaintiff's Complaint filed on November 20, 2020, when he gave it to prison officials. *Douglas v. Bughrara*, 11-CV-1535, 2013 WL 5347285, at *3 (N.D.N.Y. Sept. 23, 2013) (Kahn, J.).

Moreover, I find that Plaintiff's allegations do not amount to a "continuing violation." The continuing violation doctrine, where applicable, is an "exception to the normal knew-or-should-have-known accrual date" if there is evidence of an ongoing discriminatory policy or practice. *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (quoting *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999)). The continuing violation doctrine does not apply to "discrete acts," even where those discrete acts are a part of a "serial violation," but applies solely to claims that "by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Gonzalez*, 802 F.3d at 220 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111 (2002)). When the doctrine applies, the limitations period begins to run when the defendant has engaged in "enough activity to make out an actionable . . . claim," as long as the plaintiff has alleged some non-time-barred acts which contributed to the alleged violation. *Id.* (quoting *Morgan*, 536 U.S. at 117; *Harris*, 186 F.3d at 250). A continuing violation cannot "be established merely because the claimant continues to feel the effects of a time-barred discriminatory act." *Harris*, 186 F.3d at 250 (citing *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997)).

The continuing violation doctrine is generally disfavored in this Circuit. *See Town of Ramopo v. Town of Clarkstown*, 16-CV-2004, 2017 WL 782500, at *5 (S.D.N.Y. Feb. 27, 2017); *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 292 (S.D.N.Y. 2011) (quoting *Trinidad v. N.Y.C. Dep't of Corr.*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006)) ("[C]ourts in the Second Circuit 'have been loath to apply [the continuing violation doctrine] absent a showing of compelling circumstances.'").

According to Plaintiff, "[o]n April 17, 1987, Detective Sgt. Barry Angel did concoct a <u>proven false</u> 'confession' to proven non-existent crimes." (Dkt. No. 1, Attach. 1 at 1.) Thus, to

the extent that Plaintiff asserts causes of action related to this alleged wrong, the claims, if any,

would have accrued in 1987, or, at the very latest, February 1988, when the "crime lab examiner

and pathologist testified for the DEFENSE" and Plaintiff was acquitted of all indicted charges.

(Dkt. No. 1 at 3; Dkt. No. 1, Attach. 1 at 1.)

  In addition, Plaintiff alleges that "[o]n May 30, 1987, 3 days after the crime lab report

was issued <u>proving</u> the confession was a fraud, Det. Angel and Deputy Sheriff William Guyyey

arranged to have [Plaintiff] attacked."  (Dkt. 1, Attach. 1 at 1.)  Plaintiff does not assert any

allegations plausibly suggesting that he lacked a complete and present cause of action after the

alleged attack on May 30, 1987.  (*See generally* Dkt. No. 1.)

  The other allegations in Plaintiff's Complaint appear to have occurred several years,

possibly decades, apart.  (Dkt. 1, Attach. 1.)  As a result, I find no compelling circumstances

present to warrant applying the continuing violation doctrine.

  Under New York law, "the doctrine of fraudulent concealment prevents a party from

fraudulently concealing wrongdoing until after the tolling of the statute of limitations."  *Aiken v.*

*Nixon*, 236 F. Supp. 2d 211, 240 (N.D.N.Y. 2002) (McAvoy, J.).  "To invoke the doctrine of

fraudulent concealment properly [for purposes of seeking an equitable tolling of the statute of

limitations], a plaintiff must establish three elements, including: (1) wrongful concealment by

defendants [of their actions], (2) which prevented plaintiff's discovery of the nature of the claim

within the limitations period, and (3) due diligence in pursuing the discovery of the claim."  *New*

*York Dist. Council of Carpenters Pension Fund v. Forde*, 939 F. Supp. 2d 268, 278 (S.D.N.Y.

2013) (citing *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 60 (2d Cir. 1998); *Butala v.*

*Agashiwala*, 916 F. Supp. 314, 319 (S.D.N.Y. 1996)). "The relevant question is not the intention

underlying defendants' conduct, but rather whether a reasonable plaintiff in the circumstances

would have been aware of the existence of a cause of action." *Veltri v. Bldg. Serv. 32b-J Pension Fund*, 393 F.3d 318, 323 (2d Cir. 2004) (citing *Pearl*, 296 F.3d at 82; *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990)).

Here, the Court finds Plaintiff has not plausibly alleged any of the three elements to invoke this doctrine.

Further, although not raised by Plaintiff, having carefully reviewed the Complaint, the Court discerns no basis to invoke equitable tolling or equitable estoppel in order to salvage what are otherwise patently untimely claims. Under New York law, equitable tolling applies "where a plaintiff has been prevented in some extraordinary way from exercising rights," such that "it would have been impossible for a reasonably prudent person to learn about his or her cause of action." *Pearl*, 296 F.3d at 85. In a related but slightly different vein, equitable estoppel is available "where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay bringing the lawsuit." *Dillman v. Combustion Eng'g, Inc.*, 784 F.3d 76, 85 (2d Cir. 1986); *see also Abbas*, 480 F.3d at 642 (stating that equitable estoppel applies when a "plaintiff was induced by fraud, misrepresentation or deception to refrain from filing a timely action"). Under either doctrine, "[d]ue diligence on the part of the plaintiff in bringing an action . . . is an essential element of equitable relief." *Abbas*, 480 F.3d at 642 (quoting *Doe v. Holy See (State of Vatican City)*, 17 A.D. 3d 793, 796 (N.Y. App. Div. 3d Dep't 2005)).

As a result, the Court finds Plaintiff is not entitled to tolling and, thus, his claims, which are based on events that occurred before November 20, 2017, are time barred.

Therefore, I recommend dismissing Plaintiff's claims pursuant to 42 U.S.C. § 1983, as untimely.

**B.    Claims Pursuant to 28 U.S.C. § 1997**

Plaintiff refers to 28 U.S.C. § 1997[16] as a basis for claims that he asserted in another lawsuit against the New Mexico Probation/Parole and LaPosada Halfway House.  (Dkt. No. 1 at 7.)

To the extent that Plaintiff intended to assert claims here pursuant to 42 U.S.C. § 1997, which deals with suits by prisoners regarding prison conditions, I recommend that those claims be dismissed.

The statute provides in 42 U.S.C. § 1997j, "[t]he provisions of this subchapter shall in no way expand or restrict the authority of parties other than the United States to enforce the legal rights which they may have pursuant to existing law with regard to institutionalized persons."  42 U.S.C. § 1997j (2006).  "This clause precludes recognition of a private cause of action under 42 U.S.C. § 1997."  *Kerchee v. Smith,* 11-CV-0459, 2011 WL 5143135, at *2, n.9 (W.D. Okla. Sept. 30, 2011); *accord Chichakli v. Samuels*, 15-CV-0687, 2016 WL 11447755, at *5, n.12 (W.D. Okla. Mar. 10, 2016) ("The PLRA does not provide any private right of action."); *Woodstock v. Shaffer*, 15-CV-0041, 2015 WL 13614123, at *5 (D. Colo. Sept. 24, 2015) (citing 42 U.S.C. § 1997(a)(c)) (holding that the Civil Rights of Institutionalized Persons Act "does not provide for an individual right of action."); *see McRorie v. Shimoda,* 795 F.2d 780, 782 n. 3 (9th Cir. 1986) (stating that 42 U.S.C. § 1997j "precludes a private cause of action" under 42 U.S.C. §§ 1997-1997j); *Callahan v. Southwestern Medical Ctr.*, 03-CV-1434, 2005 WL 1238770, at *6 (W.D. Okla. Apr. 29, 2005) (stating that "[c]ourts have consistently found" that the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997a "does not provide for a[n] individual right of

---

[16]    Although Plaintiff cites to 28 U.S.C. § 1997, there is no such section of the United States Code.

action" (citations omitted)), *report and recommendation adopted by*, 2005 WL 1656917 (W.D.

Okla. July 7, 2005), *aff'd*, 178 F. App'x 837, 840 (10th Cir. May 8, 2006).

      **C.**     **Claims Pursuant to the ADA**

      Plaintiff refers to the ADA as a basis for claims that he asserted in another lawsuit against

the New Mexico Probation/Parole and LaPosada Halfway House.  (Dkt. No. 1 at 7.)

      To the extent that Plaintiff intended to assert claims here pursuant to the ADA, I

recommend that those claims be dismissed.

      **1.**     **Statute of Limitations**

      "[T]he ADA's statute of limitations is three years."  *De La Rosa v. Lewis Foods of 42nd*

*Street, LLC*, 124 F. Supp. 3d 290, 299, n.14 (S.D.N.Y. 2015).  For the reasons set forth *supra*, in

Part III.A.5. of this Order and Report Recommendation, I recommend that Plaintiff's claims

pursuant to the ADA be dismissed as time barred.

      **2.**     **Failure to State A Claim**

      In the alternative, I recommend that Plaintiff's ADA claims be dismissed for failure to

state a claim upon which relief may be granted.

      Although the Compliant is sparse, and largely incomprehensible, it states that Plaintiff is

a "71-year old, 100% disabled veteran of the United States Navy."  (Dkt. No. 1, Attach. 1 at 1.)

The Complaint provides no allegations of discrimination based on his disability.  (*See generally*

Dkt. 1.)  However, construing the Complaint liberally, as the Court must, Plaintiff failed to allege

facts plausibly suggesting claims pursuant to Title II or Title III of the ADA. [17]

---

[17]     Based on the facts alleged, Plaintiff could not proceed with a claim under Title I of the
ADA, which addresses employment discrimination, because he has neither alleged that he was
employed by Defendants, nor alleged that he exhausted administrative remedies by filing a
charge with the Equal Employment Opportunity Commission before pursuing litigation in
federal court.  42 U.S.C. § 12117; *see Mary Jo C. v. New York State Local Retirement Sys.*, 707

### i.    Title II of the ADA

Title II of the ADA "proscribes discrimination against the disabled in access to public services." *Harris v. Mills,* 572 F.3d 66, 73 (2d Cir. 2009) (citing *Powell v. Nat'l Bd. of Med. Exam'rs,* 364 F.3d 79, 84-85 (2d Cir. 2004), *corrected,* 511 F.3d 238 (2d Cir. 2004)).  The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  The ADA is applicable to inmates in state correctional facilities.  *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998); *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016).

Here, the Compliant is devoid of any factual allegations plausibly suggesting that Plaintiff was unable to access programs due to his disability, how his disability prevented him from accessing those programs, or what accommodations he sought and was denied by Defendants.  (*See generally* Dkt. 1.)  Courts "routinely dismiss ADA suits by disabled inmates

---

F.3d 144, 169 (2d Cir. 2013) (quoting *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 360, n.1 (2001)) ("'Title I of the ADA expressly deals with th[e] subject' of employment discrimination.").  Moreover, Title IV of the ADA does not appear to be applicable to Plaintiff's claims because Title IV prohibits disability discrimination in telecommunications.  *Genco v. Sargent & Collins LLP*, 18-CV-0107, 2018 WL 3827742, at *3, n.5 (W.D.N.Y. June 4, 2018).  Finally, Title V of the ADA, sometimes referred to as the "retaliation provision," also does not appear applicable because Plaintiff does not allege that he engaged in activity protected by the ADA, that Defendants were aware of that activity, or any causal connection between the allegedly adverse actions that Defendant took against him and the protected activity.  *Chiesa v. New York State Dep't of Labor*, 638 F. Supp. 2d 316, 323 (N.D.N.Y. 2009) (Hurd, J.); *see also Constantine v. Merola*, 2020 WL 8450544, at *5 (N.D.N.Y. Nov. 6, 2020) (Lovric, M.J.) (recommending dismissal of the plaintiff's ADA Title V claims where the complaint failed to allege that the plaintiff "engaged in any protected activity, that any [d]efendant knew that [p]laintiff was involved in the protected activity, or that any adverse decision or course of action taken by [d]efendants was causally connected to that protected activity."), *report and recommendation adopted by* 2021 WL 392487 (N.D.N.Y. Feb. 4, 2021) (Hurd, J.).

that . . . do not allege that the inmate was treated differently because of his or her disability."

*Elbert v. New York State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010).

In addition, other than a conclusory assertion that he is disabled, Plaintiff does not assert

facts plausibly alleging that he is a qualified individual under the ADA.  *See Schlosser v. Walker*,

20-CV-0433, 2020 WL 7324679, at *3 (D. Conn. Dec. 11, 2020) (holding that the plaintiff's

allegation that he suffers from "a serious mental illness" was insufficient to allege that he was a

qualified individual pursuant to the ADA); *Burdick v. Town of Schroeppel*, 16-CV-1393, 2017

WL 5509355, at *13 (N.D.N.Y. Jan. 31, 2017) (Dancks, M.J.) ("A plaintiff's complaint must

plead facts plausibly suggesting that his alleged disability can meet all of the elements contained

in the ADA's definition of disability."); *see also Hale v. King,* 642 F.3d 492, 500 (5th Cir. 2011)

(holding that, "[t]o establish a claim under [42 U.S.C. § 12102(1)(A)], a plaintiff must allege that

he (1) has a[n] . . . impairment that (2) substantially limits (3) a major life activity," and

dismissing plaintiff's complaint where it failed to allege, *inter alia,* "that his conditions

substantially limited him in his performance of a life activity"); *Cox v. Civista Med. Ctr.,* 16 F.

App'x 185, 186 (4th Cir. 2001) (affirming district court's dismissal of the plaintiff's complaint

because it failed to "demonstrate a disability" under 42 U.S.C. § 12102(1) (A) or (B));

*Ajuluchuku v. Macy's,* 12-CV-1855, 2012 WL 5464467, at *3 (E.D.Cal. Nov. 7, 2012)

(dismissing the plaintiff's amended complaint because it did "not allege facts establishing any of

[the] elements [of 42 U.S.C. § 12102(1)]); *Thompson v. New York City Dep't of Probation,* 03-

CV-4182, 2003 WL 22953165, at *3 n.5 (S.D.N.Y. Dec. 12, 2003) ("Under the ADA definition

of 'disability,' merely pleading a physical impairment without specifying that it 'substantially

limits' a 'major life activity' may be insufficient to state a claim for relief.").

As a result, in the alternative, I recommend that Plaintiff's ADA claims under Title II be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. *See Hill v. LaClair*, 20-CV-0441, 2020 WL 2404771, at *8 (N.D.N.Y. May 11, 2020) (Hurd, J.) (dismissing ADA Title II claims "pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.").[18]

### ii.     Title III of the ADA

Title III of the ADA prevents discrimination based on a disability in places of public accommodation. 42 U.S.C. § 12182. However, Title III "expressly does not apply to public entities, including local governments." *Bloom v. Bexar Cnty.*, 130 F.3d 722, 726 (5th Cir. 1997); *see Morales v. New York*, 22 F. Supp. 3d 256, 266-67 (S.D.N.Y. 2014) ("Title III is not applicable to public entities."). Instead, "[a] claim under Title III of the [ADA] can only be asserted against a private entity engaged in the provision of public accommodations, such as an inn, hotel or private school." *Morales*, 22 F. Supp. 3d at 266 (citing 42 U.S.C. §§ 12181(7); 12182); *see also Booker v. City of New York*, 17-CV-7035, 2018 WL 4616048, at *5, n.3

---

[18]     In the alternative, to the extent that Plaintiff attempts to assert ADA Title II claims against Defendants Angel and Guyyey in their individual capacities, I recommend that those claims be dismissed because "individuals cannot be held liable under the ADA." *Netti v. Ayers*, 17-CV-0976, 2017 WL 7542494, at *18 (N.D.N.Y. Oct. 5, 2017) (Baxter, M.J.) (citing *Baross v. Greenlawn*, 16-CV-4805, 2017 WL 2124424, at *4 (E.D.N.Y. May 15, 2017)), *report and recommendation adopted by* 2018 WL 813509 (N.D.N.Y. Feb. 9, 2018) (Suddaby, C.J.); *accord Rosenfield v. New York State Div. of Veterans' Affairs*, 18-CV-1299, 2019 WL 4621962, at *10 (N.D.N.Y. Sept. 24, 2019) (Suddaby, C.J.); *see Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (holding that Title II of the ADA does not provide for suits against individuals); *Fox v. State Univ. of N.Y.*, 497 F. Supp. 2d 446, 449 (E.D.N.Y. 2007) ("[T]here is no individual liability under Title I or Title II of the ADA, or the ADEA."); *Sutherland v. New York State Dep't of Law*, 96-CV-6935, 1999 WL 314186, at *7 (S.D.N.Y. May 19, 1999) ("Individual defendants may not be held personally liable for alleged violations of the ADA.").

(S.D.N.Y. Sept. 26, 2018) (holding that a claim pursuant to Title III of the ADA cannot be asserted against the City of New York or its employees in their official capacities because they are not private entities engaged in the provision of public accommodations).

Here, Defendants are public entities, which are thus, not amenable to a Title III ADA claim. *See Maioriello v. New York State Office for People with Dev. Disabilities*, 14-CV-0214, 2015 WL 5749879, at *16 (N.D.N.Y. Sept. 30, 2015) (Suddaby, C.J.) (dismissing the plaintiff's claims to the extent that they were based on a violation of Title III because the New York State Office for People with Developmental Disabilities is a public entity).[19]

Moreover, for the reasons set forth *supra*, in Part III.C.2.i. of this Order and Report-Recommendation, Plaintiff failed to allege that he was a qualified individual pursuant to the ADA.

In addition, "Title[ ] . . . III of the ADA prohibit[s] discrimination against qualified disabled individuals by requiring that they receive 'reasonable accommodations' that permit them to have access to and take a meaningful part in public services and public accommodations." *Powell*, 364 F.3d at 85, opinion corrected, 511 F.3d 238 (2d Cir. 2004) (citations omitted). To adequately plead a claim pursuant to Title III of the ADA for failure to provide reasonable accommodations, a plaintiff must allege facts establishing that the defendant's "failure to make 'reasonable modifications' to their policies, practices, and

---

[19]    To the extent that Plaintiff intended to assert a Title III claim against Defendants Angel and Guyyey in their individual capacities, Title III provides a private right of action for injunctive relief but no right of action for monetary relief. 42 U.S.C. § 12188; *see Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 94 (2d Cir. 2012) (holding that Title III of the ADA "authorizes private actions only for injunctive relief, not monetary damages."); *Powell*, 364 F.3d at 86 ("Monetary relief . . . is not available to private individuals under Title III of the ADA."); *see also Ervine v. Deser View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 867 (9th Cir. 2014) ("Damages are not an available remedy to individuals under Title III of the ADA; individuals may receive only injunctive relief."). As a result, those claims should also be dismissed.

procedures deprived plaintiff of the ability to access the 'goods, services, facilities, privileges, advantages, or accommodations' available to those lacking [the] plaintiff's disabilities." *Andersen v. N. Shore Long Island Jewish Healthcare Sys. Zucker Hillside Hosp.*, 12-CV-1049, 2013 WL 784391, at *9 (E.D.N.Y. Jan. 23, 2013) (quoting 42 U.S.C. 12182(b)(2)(A)(i)-(ii) (additional citation omitted)), *report and recommendation adopted* as modified, 2013 WL 784344 (E.D.N.Y. Mar. 1, 2013).

Here, the Complaint is devoid of factual allegations concerning "policies, practices, [or] procedures" by Defendants that deprived Plaintiff of ability to access goods, services, or privileges available to those without Plaintiff's disabilities. *Doe v. NYSARC Tr. Serv., Inc.*, 20-CV-801, 2020 WL 5757478, at *8 (N.D.N.Y. Sept. 28, 2020) (Hummel, M.J.), *report and recommendation adopted by*, 2020 WL 7040982 (N.D.N.Y. Dec. 1, 2020) (Sannes, J.).

As a result, I recommend that, in the alternative, to the extent that Plaintiff intended to assert claims pursuant to Title III of the ADA, those claims be dismissed for failure to state a claim.

**D.    Relief Sought by Plaintiff is Inappropriate**

The only relief that Plaintiff appears to seek is his immediate release to his V.A. caregiver and fiduciary in California.  (Dkt. No. 1 at 5.)  However, the Supreme Court has held that a challenge by a prisoner to the fact or duration of his confinement and seeking an immediate or earlier release from that confinement must be pursued through a habeas corpus proceeding rather than in an ordinary civil rights action.  *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973); *see Garcia v. Westchester Cnty. District Attorney Office*, 21-CV-0348, 2021 WL 411546, at *3 (S.D.N.Y. Feb. 4, 2021) ("A plaintiff may not challenge the validity of his confinement or seek release from custody in a civil action under § 1983, but must instead bring a

petition for a writ of habeas corpus to seek such relief."); *Martinez v. Hynes*, 20-CV-4325, 2021 WL 242232, at *2 (E.D.N.Y. Jan. 22, 2021) ("Prisoners have other ways of challenging convictions they believe to be unconstitutional, first through direct appeal and then through a writ of habeas corpus pursuant to 28 U.S.C. § 2254); *London v. Nassau Cnty. District Attorney's Office*, 20-CV-3988, 20-CV-3989, 20-CV-3990, 2020 WL 7699644, at *9, n.6 (E.D.N.Y. Dec. 28, 2020) (abstaining from adjudicating the plaintiff's remaining claims seeking injunctive relief because habeas corpus relief is the exclusive remedy in federal court for a state prisoner seeking release from custody).

In this case, the Complaint and attached exhibits do not reflect that Plaintiff has complied with the exhaustion requirements for filing a habeas petition pursuant to 28 U.S.C. § 2254. As a result, in the alternative, to the extent that Plaintiff's Complaint could be construed as a habeas petition, I recommend that it be dismissed for failure to exhaust the available state court remedies. *Patterson v. New York*, 2020 WL 7646739, at *3 (N.D.N.Y. Dec. 23, 2020) (D'Agostino, J.) (dismissing the plaintiff's complaint to the extent that it could be construed as a habeas petition where the plaintiff failed to allege that he complied with the exhaustion requirements for filing a habeas corpus petition and holding that a plaintiff may not challenge the legality of his conviction through a section 1983 action and may only obtain that relief by bringing a petition for a writ of habeas corpus).

## V.    OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so

requires.").  An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend."  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[20]

    With respect to Plaintiff's claims pursuant to 42 U.S.C. § 1983, I recommend that the claims against Defendants New York, Binghamton Police Department, Broome County Sheriff's Department, New York Appellate Division Third Department, United States District Court for the Northern District of New York, and Second Circuit Court of Appeals, be dismissed with prejudice and without leave to amend.  *See Forjone*, 414 F. Supp. 3d at 303-04 (dismissing with prejudice the plaintiff's claims against the state and federal defendants based on the doctrine of sovereign immunity because "[p]ermitting amendment would be unproductive in this instance."); *Johnson*, 2020 WL 758964, at *2 (recommending dismissal, without leave to amend, the plaintiff's claims against the Appellate Division Third Department); *Jackson*, 2016 WL 4004612, at *5 (dismissing claims against the Syracuse Police Department with prejudice and

---

[20]    *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp.*, 550 U.S. at 544.

without leave to amend because the Syracuse Police Department "is not susceptible to suit under § 1983."). However, to the extent that Plaintiff attempted to assert claims against Defendants Angel and Guyyey—in their individual or official capacities—I am unable to conclude with complete certainty that if permitted leave to amend the complaint, Plaintiff could not assert a plausible claim pursuant to 42 U.S.C. § 1983.

Moreover, generally, a district court should not dismiss claims as time barred without providing a *pro se* plaintiff with "notice and opportunity to be heard" as to whether there might be a meritorious tolling argument or other reason why the complaint might be considered. *Abbas*, 480 F.3d at 640. Therefore, I recommend that Plaintiff's time barred claims pursuant to 42 U.S.C. § 1983 and the ADA be dismissed with leave to amend.[21]

In addition, I recommend that to the extent that Plaintiff intended to assert claims pursuant to 42 U.S.C. § 1997, those claims be dismissed with prejudice and without leave to amend because permitting amendment would be unproductive.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying

---

[21]    To the extent that Plaintiff seeks monetary damages against Defendants Angel and Guyyey in their individual capacities pursuant to the ADA I recommend that those claims be dismissed with prejudice and without leave to amend.

acts, and each individual who committed each alleged wrongful act.  In addition, the revised

pleading should allege facts demonstrating the specific involvement of any of the named

defendants in the constitutional deprivations alleged in sufficient detail to establish that they

were tangibly connected to those deprivations.  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir.

1986).  Finally, Plaintiff is informed that any such amended complaint will replace the existing

Complaint and must be a wholly integrated and complete pleading that does not rely upon or

incorporate by reference any pleading or document previously filed with the Court.  *See Shields*

*v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an

amended complaint ordinarily supersedes the original and renders it of no legal effect.").

  **ACCORDINGLY**, it is

  **ORDERED** that the amended application to proceed *in forma pauperis* (Dkt. No. 4) is

**DENIED WITHOUT PREJUDICE**; and it is further[22]

  **ORDERED** that the Clerk of the Court shall provide Plaintiff with a blank inmate

authorization form; and it is further

  **ORDERED** that the Clerk of the Court shall amend the docket so as to **ADD** as

Defendants the additional entities and individuals identified in the Complaint (i.e. the Broome

County Sheriff's Department, Detective Sergeant Barry Angel, and Deputy Sheriff William

Guyyey); and it is further respectfully

  **RECOMMENDED** that the Court **DISMISS WITHOUT LEAVE TO REPLEAD**

Plaintiff's (1) claims pursuant to 42 U.S.C. § 1983 against Defendants New York, Binghamton

---

[22]  If Plaintiff wishes to proceed with this action, he must either (i) pay the $402.00 filing
fee, or (ii) submit a renewed IFP application detailing his current financial condition complete
with the required inmate authorization form, within thirty (30) days from the date of the filing of
Court's Decision and Order.  Failure to comply with this directive will result in the issuance of a
report and recommendation to the assigned district judge that the action be dismissed.

Police Department, Broome County Sheriff's Department, New York State Appellate Division Third Department, United States District Court for the Northern District of New York, and Second Circuit Court of Appeals; and (2) claims pursuant to 42 U.S.C. § 1997, for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD**

Plaintiff's (1) claims pursuant to 42 U.S.C. § 1983 against Defendants Angel and Guyyey; and (2) claims pursuant to the ADA, for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[23]

---

[23]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[24]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: March 23, 2021
Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[24]    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).